**Tony SHERMAN, Plaintiff,**

v.

**MARION COUNTY CHILD SUPPORT DIVISION, and Indiana Family And Social Services Administration, Child Support Bureau, Defendants.**

**Cause No. IP 02–0431–C–K/T.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 9, 2002.

J. Kathryn Jenkins, Coots Henke & Wheeler P C, Carmel, IN, for Plaintiff.

Stephanie Rothenberg, Office of Attorney General, Indianapolis, IN, for Defendants.

## ENTRY ON DEFENDANTS' MOTION TO DISMISS

BAKER, United States Magistrate Judge.

In 1993, Plaintiff Tony Sherman had a single sexual encounter with Tonya Ghant, who thereafter became pregnant and gave birth to a child. Ghant informed Sherman that he was the child's father. Based on this representation, in 1994 Sherman accepted financial responsibility for the child and entered into a voluntary paternity judgment in the state court. However, as time progressed, Sherman questioned whether he was the child's true father, and requested that Ghant and the child submit to a DNA test. The results of the test revealed that Sherman was not the child's biological father.

Sherman brought suit in the state court to overturn the judgment of paternity entered in 1994, and asserted a claim of fraud against Ghant. The state court subsequently denied Sherman's petition to overturn the judgment of paternity. Now, Sherman asserts constitutional and civil rights claims in the present action against Defendants Marion County Prosecutor's Office Child Support Division ("CSD")

(a.k.a. Marion County Child Support Division), and Indiana Family and Social Services Administration ("FSSA"). Sherman's complaint seeks virtually the same relief he sought in state court (i.e. the disestablishment of paternity).

Defendants move to dismiss Sherman's complaint, claiming, among other defenses, that the *Rooker–Feldman* doctrine deprives this Court of subject matter jurisdiction, and thus bars any recovery for Sherman. For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## I. Background

On May 11, 1994, Ghant gave birth to a child after Ghant and Sherman engaged in sexual relations on a single occasion. [Compl., Ex. B]. On June 6, 1994, Sherman entered into a voluntary judgment because Ghant told Sherman that it was physically impossible for any other person to be the biological father of the child. [Compl. ¶¶ 9–10]. Subsequently, on August 22, 1994, the state court entered a voluntary paternity judgment which established that Sherman was the biological father of the child born to Ghant. [Compl. ¶¶ 8–9].

On September 12, 1994, shortly after entering into the voluntary judgment, Sherman sent a letter to CSD expressing his doubts that he was the biological father of the child. CSD never responded to Sherman's letter. [*Id.* at ¶¶ 12–13].

As the child grew older, Sherman's doubts continued. In the spring of 2000, Sherman convinced Ghant that she and the

child should submit to a DNA test to determine whether he was the biological father. On May 9, 2000, the DNA test revealed that Sherman had a zero percent chance of being the biological father of Ghant's child. [*Id.* at ¶¶ 15–16].

Sometime thereafter, Sherman filed a petition to overturn the voluntary paternity judgment concerning "the original adjudication of paternity and child support," and alleged that Ghant perpetuated a "fraud on the court." [Pl.'s Br., p. 3]. On August 21, 2000, a hearing was held in Marion Circuit Court, in which Sherman gave testimony.[1] On September 6, 2000, Sherman's petition to overturn the judgment of paternity was denied by the state court. There was no appeal of the state court decision. [Def.'s Br., p. 3].

In late July 2001, Sherman sent a letter to CSD informing them of the results of the DNA test. In a letter dated August 1, 20001, CSD informed Sherman that it would "vigorously defend" any action brought to disestablish paternity. [Compl. ¶ 19, Ex. E]. To date, Sherman continues to pay child support for Ghant's child. [Compl. ¶ 20].

Pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 60(b), Sherman seeks relief from the state court's judgment alleging that: (1) by being compelled to pay child support for a child for which he is not the biological father, Defendants are taking his property without due process in violation of the Fifth Amendment; (2) Defendants' continued

---

1. The Court held a status conference with the parties on October 8, 2002. The Court advised the parties of its intention to take judicial notice of the docket sheet in *In re Paternity of A.M. Ghant v. Sherman,* Cause No. 49C01–4906–JP–2190, as well as the transcript of the September 6, 2000 hearing held in that case. The Court advised the parties that the purpose of taking judicial notice of these items was to establish for purposes of

the pending motion that: (1) Sherman was present at the hearing; (2) Sherman testified at that hearing; and (3) Sherman was represented by counsel in the state court proceeding. The parties did not object to the Court considering these facts, and in fact stipulated to the foregoing facts and their use in resolving the pending motion, thereby rendering judicial notice of these facts unnecessary.

enforcement of the child support order violates his substantive due process rights; and (3) he has a constitutionally protected liberty interest to control his official status as a parent. [Compl., ¶¶ 47–48].

## II. Standard on Motion to Dismiss

Although the parties frame the present motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the proper vehicle to seek dismissal is under Rule 12(b)(1), since Defendants are contesting whether the Court has subject matter jurisdiction over the present action.

The standard of review for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends upon the purpose of the motion. *See Shoulders v. Sheahan,* 2001 WL 1617216, *1 (N.D.Ill. 2001), *citing* 5A Wright & Miller, Federal Practice & Procedure: Civil.2d § 1363 at 456 (2d ed.1990). If the motion challenges the sufficiency of the Court's subject matter jurisdiction allegations, as is the case here, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Transit Exp., Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir.2001). If, however, the defendant denies or controverts the truth of the jurisdictional allegations, the Court may properly "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri,* 2001 WL 1543516, *8 (N.D.Ill.2001), *quoting Capitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir. 1993). In any event, dismissal is appropriate only if it is impossible for the plaintiff to prevail under any set of facts that could be proven consistent with the allegations. *See Szumny v. Amer. Gen. Fin., Inc.,* 246 F.3d 1065, 1067 (7th Cir.2001).

## III. Discussion

 Defendants argue that this Court has no subject matter jurisdiction over Sherman's claims because they are preempted by the *Rooker–Feldman* doctrine. Under *Rooker–Feldman,* a district court is precluded from exercising subject matter jurisdiction over claims that seek review of a state court judgment. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 483–84 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine bars not only attacks on issues actually decided in state court, but also extends to claims that are "inextricably intertwined" with the state court judgment. *Rothman v. Supreme Court of Illinois,* 2002 WL 1163720, *2 (N.D.Ill. May 31, 2002), *citing Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir.1999). A claim is "inextricably intertwined" with a state court decision if the district court "is in essence being called upon to review the state court decision." *Network Towers, LLC v. Town of Hagerstown,* 2002 WL 1364156, *3 (S.D.Ind.2002), *quoting Manley v. City of Chicago,* 236 F.3d 392, 396 (7th Cir.2001); *Long,* 182 F.3d at 554.

 In order to determine the applicability of *Rooker–Feldman,* "the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Bass v. Arrow Financial Services, L.L.C.,* 2002 WL 1559635, *2–3 (N.D.Ill. July 16, 2002), *quoting Rizzo v. Sheahan,* 266 F.3d 705, 713 (7th Cir.2001). If the injury alleged results "from the state court judgment itself, the *Rooker–Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction...." *Id.* Thus, the pivotal inquiry is "whether the federal plaintiff seeks to set aside a state court

judgment or whether he is, in fact, presenting an independent claim." *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir.1996); *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 (7th Cir.2000).

*Rooker–Feldman* consistently has not applied when: (1) a federal plaintiff was not a party in the state proceeding; and (2) the federal plaintiff's rights were not affected by the state proceeding. *Nationscredit Home Equity Servs. Corp. v. City of Chicago*, 135 F.Supp.2d 905, 914 (N.D.Ill.2001). *See also Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 702 (7th Cir.1998) (if the alleged injury of the federal plaintiff "is distinct from the state court judgment and not inextricably intertwined with it, the *Rooker–Feldman* doctrine does not apply.").

Sherman claims that *Rooker–Feldman* does not apply because: (1) the state court action concerned the adjudication of paternity and child support; (2) in this case, he is asserting constitutional and civil rights claims that were not previously litigated; and (3) the present case involves different party defendants. [Pl.'s Br., pp. 3–4]. These arguments are unpersuasive for numerous reasons.

■First, by the very nature of this action, Sherman seeks to utilize the district court to obtain relief from the state court judgment via Rule 60(b)(8). This evidences that the present action was brought to set aside a state court judgment, and is not an independent claim from that of the state court proceedings. In addition, both the state action and the present case seek similar relief; that is, relief of Sherman's obligation to pay child support stemming from the 1994 judgment. *See, e.g., Zealy v. City of Waukesha*, 153 F.Supp.2d 970, 979 (E.D.Wis. 2001) ("lower federal courts have no authority to grant collateral review of a state court civil judgment or of claims inextricably intertwined with a state court determination. Instead, a litigant who has lost in state court must seek review in the United States Supreme Court."); *Edwards v. Illinois Bd. of Admissions to Bar*, 261 F.3d 723, 729 (7th Cir.2001) ("To determine whether the alleged injury is inextricably intertwined, the court focuses on whether the federal court is being called upon to review the state court decision.").

■ Second, an exception to *Rooker–Feldman* does not apply here since Sherman was a plaintiff in the state proceeding, and his rights were affected by the state court judgment. Indeed, Sherman's injury flows directly from the state court judgment since he continues to pay child support. *See, e.g., Zurich American Ins. Co. v. Superior Court for State of California, County of Los Angeles*, 205 F.Supp.2d 964, 966 (N.D.Ill.2002), *quoting Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir.2000) ("[*Rooker–Feldman* ] bars federal jurisdiction when the federal plaintiff alleges that [its] injury was caused by a state court judgment."). *Cf. Jensen v. Foley*, 295 F.3d 745, 747 (7th Cir.2002) (the injury that the plaintiffs complained of was caused not by the state court's temporary custody order, but by the underlying taking of the child by state and local officials).

■ Third, despite the fact that Sherman creatively masks this case as a civil rights action, the only injuries alleged by him derive from the state court judgment itself. Sherman's complaint "is nothing but an attempt to re-litigate issues previously decided against [him]." *Casserly v. Nienhouse*, 2002 WL 1611594, *2 (N.D.Ill. July 17, 2002). It is settled that "a plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action." *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir.1993). *See also Garry v. Geils*, 82 F.3d 1362, 1369 (7th Cir.1996) (a federal plaintiff may not seek the reversal of a state court decision

simply by casting his complaint in the form of a constitutional violation); *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510–12 (7th Cir.1996), *cert. denied*, 520 U.S. 1204, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997) (Seventh Circuit has held that the *Rooker–Feldman* doctrine applies to cases even when it is claimed that the state court proceedings violated due process); *Remer v. Burlington Area School District*, 205 F.3d 990, 996 (7th Cir.2000) (*Rooker–Feldman* applies "no matter how erroneous or unconstitutional the state court judgment may be").

Fourth, Sherman had an opportunity to raise his civil rights claims in his state court action, but failed to do so. This exception to *Rooker–Feldman* was recently discussed by the Seventh Circuit in *Brokaw v. Weaver*, 305 F.3d 660 (7th Cir. 2002). In that case, plaintiff filed suit alleging various state law and federal constitutional claims against various individuals involved in instigating, investigating, directing, or overseeing her removal from the custody of her parents. In 1983, a state court proceeding ordered the forcible removal of the plaintiff due to allegations of child neglect. [*Id.* at 662–63]. At the state proceeding, neither the parents nor the plaintiff were permitted to speak, present evidence, or cross-examine witnesses. [*Id.* at 663]. In reversing the district court's granting of defendants' motion to dismiss, the court held that "[w]hile the *Rooker–Feldman* doctrine bars federal subject matter jurisdiction over issues raised in state court, and those inextricably intertwined with such issues, 'an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings.'" [*Id.* at 668, *quoting Long*, 182 F.3d at 558]. As a result, the court found that "*Rooker–Feld-*

*man* doctrine does not bar plaintiff's claims because [plaintiff] did not have a reasonable opportunity to raise her constitutional claims in the state court child neglect proceedings," and because she "wasn't even present and was not represented at that hearing by a guardian ad litem or an attorney." *Brokaw*, at 668.

In the case at bar, as early as 1994, through a letter Sherman sent to CSD, Sherman expressed his doubt that he was the biological father of the child. However, CSD never relieved him of his obligations to pay child support. [Compl. ¶ 12, Ex. C]. When the results of the DNA test concluded that he was not the father of the child, Sherman filed a petition in August 2000 to overturn the voluntary paternity judgment entered in 1994, and alleged that Ghant perpetuated a "fraud on the court." [Pl.'s Br., p. 3]. Unlike the situation in *Brokaw*, nothing prevented Sherman from raising his civil rights claims in the state court proceedings. In addition, Sherman was represented by counsel in the petition he filed in the state court in 2000. Sherman also could have appealed this decision, but did not do so. Instead, Sherman filed an action in federal court.

Accordingly, unlike the plaintiff in *Brokaw*, Sherman was represented by counsel in the state court proceedings, attended and gave testimony at a state court hearing, and chose not to appeal the adverse result.[2] Sherman could have pursued his remedies through the state system, and could have sought certiorari if necessary from the Supreme Court of the United States under 28 U.S.C. § 1257. *See Durgins v. City of East St. Louis*, 272 F.3d 841 (7th Cir.2001). Based upon this record, Sherman had a reasonable opportunity to raise his constitutional claims in the state court proceedings, and *Brokaw* provides

---

2. The Court notes that, according to the state court docket sheet, Sherman's counsel of record at the September 6, 2000 hearing is not Sherman's counsel of record in this action.

no support for avoiding the *Rooker–Feldman* doctrine. *See, e.g., Network Towers, LLC v. Town of Hagerstown,* 2002 WL 1364156, *3 (S.D.Ind. May 15, 2002), *citing Kamilewicz v. Bank of Boston Corp.,* 92 F.3d 506, 509–10 (7th Cir.1996) ("a person who claims that her federal rights were violated by a state court judgment must assert those rights through an appeal of the judgment in the state courts-not by an action in a federal district court-with the only potential federal court review coming from the Supreme Court of the United States.").

Fifth, some courts have recognized an exception to *Rooker–Feldman* where it is shown that a defendant's recommendations to the state court on domestic relations cases are made out of malice or personal bias. For instance, in *Ernst v. Child and Youth Services of Chester County,* 108 F.3d 486 (3rd Cir.1997), a grandmother who had sole guardianship of her granddaughter sued the county child welfare department and case workers. The plaintiff alleged substantive and procedural due process claims after the defendants removed and retained custody of her granddaughter for five years. [*Id.* at 488–89]. The court held that "the *Rooker–Feldman* doctrine did not preclude the district court from deciding those claims because a ruling that the defendants violated [plaintiff's] right to substantive due process by making recommendations to the state court out of malice or personal bias would not have required the court to find that the state court judgments made on the basis of those recommendations were erroneous." [*Id.* at 491–92].

 In this case, Sherman has not presented any evidence that Defendants are enforcing a judgment ordering him to pay child support based on malice or personal bias. The only malice or personal bias that may have been present was on the part of Ghant. (Sherman asserted a fraud claim against Ghant in the state court proceeding.) That claim may not be addressed here because Ghant is not a defendant in this action, and in any event, the claim was already litigated in the state court proceeding.

 Sixth, customarily, cases involving child support obligations such as the one here are matters within the realm of state domestic relations law, and lower federal courts are precluded by the *Rooker–Feldman* doctrine from reviewing state court judgments. *See T.W. by Enk v. Brophy,* 124 F.3d 893, 898 (7th Cir.1997) (applying *Rooker–Feldman* to child custody decisions); *Jensen v. Foley,* 295 F.3d 745 (7th Cir.2002) (child custody case).

The Court is mindful that this ruling may be viewed as a harsh result for Sherman. This result perhaps could have been avoided had Sherman appealed the state court judgment, rather than proceeded into federal court. As it is, however, the *Rooker–Feldman* doctrine divests this Court of subject matter jurisdiction to hear this case. Accordingly, Defendants' motion to dismiss is GRANTED.

## IV. Conclusion

For the reasons set forth, Defendants' motion to dismiss is GRANTED. Sherman's complaint is dismissed without prejudice.

So ordered.