In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-3271 & 00-3486

Draphy Durgins,

Plaintiff-Appellee,

v.

City of East St. Louis, Illinois, et al.,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of Illinois.
No. 97-933--William L. Beatty, Judge.

Argued October 30, 2001--Decided November 16, 2001

  Before Easterbrook, Rovner, and Williams,
Circuit Judges.

  Easterbrook, Circuit Judge.  While on duty
as a patrol officer of the East St. Louis
police, Draphy Durgins and two colleagues
took time out for horseplay. Aubrey
Keller threw some of Durgins's bullets on
the floor. She responded by swiping some
of Keller's bullets, and he then took her
knife. Missing equipment or ammunition
can cause problems if the department
holds a surprise inspection, and when one
was held Keller flunked. With Bobby
Cole's assistance, Keller decided to play
keep-away from Durgins with her knife,
while she held onto the bullets. The
frolic continued when Keller and Cole
handcuffed Durgins to a fence with her
apparent consent. She called on the radio
for help, and with sirens blaring two
cruisers appeared to free her. Durgins
refused help until a lieutenant arrived,
then expressed contentment at an injury
(a strained shoulder attributable to the
handcuffing) that enabled her to take the
weekend off without using vacation days.

  Keller and Cole were disciplined for
this incident; Durgins was not. She filed
an administrative complaint contending
that the discipline of Cole and Keller
should have been more severe. This led to
an investigation of all three officers--
and in the course of this investigation

the department came upon information leading it to believe that Durgins had concealed a criminal record. She was suspended and then fired (more for falsifying credentials than for the convictions themselves), the City's Board of Police and Fire Commissioners sustained the discharge, and a state court declined to overturn the Board's decision. Next Durgins filed this federal suit under 42 U.S.C. sec.1983, contending that her discharge penalized her right of free speech, particularly her complaint about the discipline of her fellow officers. A jury awarded her $175,000 in damages, to which the judge added attorneys' fees and an injunction requiring the City to reinstate her notwithstanding the outcome of the state litigation. The City and its Chief of Police have appealed.

It is hard to see how any constitutional claim is presented by this intramural squabble, given the principle that communications about personnel matters are not covered by the first amendment. See, e.g., Connick v. Myers, 461 U.S. 138 (1983); Waters v. Churchill, 511 U.S. 661 (1994); Taylor v. Carmouche, 214 F.3d 788 (7th Cir. 2000). Durgins's submission that the public has an interest in how police departments handle their personnel systems is a thinly veiled request to disregard Connick and treat all speech within a public bureaucracy as protected by the first amendment. Moreover, even if the personnel dispute were covered by the first amendment, it is difficult to see how reinstatement could be justified; resume fraud is not protected speech, and an employer that finds during an investigation (or even during discovery) that it should not have hired the person in the first place may decide to end the employment without any objection that this is "retaliation" for the speech, the original complaint, or the suit. See McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995). Perhaps Durgins has some way around these obstacles; we need not decide, because her suit should have been dismissed at the threshold.

Durgins had a hearing before the Board of Police and Fire Commissioners, which concluded that she had falsified her credentials. She had, and used, an opportunity to obtain review in state court. There she could have argued not

only that the Board acted on insufficient evidence, or used improper procedures, but also that the City initiated the discharge proceedings in retaliation for protected speech. Such a constitutional objection could not have been resolved on the record before the Board, but Illinois permits constitutional claims (including those based on 42 U.S.C. sec.1983) to be joined with administrative-review proceedings and explored in discovery. See Stratton v. Wenona Community Unit District No. 1, 133 Ill. 2d 413, 429-30, 551 N.E.2d 640, 646-47 (1990). Durgins therefore could have presented all of her theories--evidentiary, statutory, and constitutional--to the state court and obtained a decision in one consolidated proceeding. Instead she split her theories between courts and must surmount the City's defense of claim preclusion (also known as res judicata). The district court rejected this defense, observing that the record of the state-court proceeding does not show that Durgins presented her constitutional theories to that tribunal. This assumes that Illinois, whose law governs the preclusive effect of its own judgments, see 28 U.S.C. sec.1738, permits a litigant to withhold a legal theory and sue a second time. Yet Illinois, like other states, applies the doctrine of merger and bar, precluding sequential pursuit not only of legal theories actually litigated but also of those that could have been litigated in the first action. See People ex rel. Burris v. Progressive Land Developers, Inc., 151 Ill. 2d 285, 295-96, 602 N.E.2d 820, 825 (1992); Henry v. Farmer City State Bank, 808 F.2d 1228, 1234 (7th Cir. 1986) (summarizing Illinois law).

Because Illinois (a) permits the joinder of sec.1983 claims with administrative-review actions, and (b) applies the doctrine of merger and bar, we have held that an administrative-review action forecloses any later sec.1983 action in federal court arising out of the same transaction. See, e.g., Manley v. Chicago, 236 F.3d 392 (7th Cir. 2001); Davis v. Chicago, 53 F.3d 801 (7th Cir. 1995); Pirela v. North Aurora, 935 F.2d 909, 913-14 (7th Cir. 1991); Hagee v. Evanston, 729 F.2d 510, 513-14 (7th Cir. 1984). See also Charles Koen & Associates v. Cairo, 909 F.2d 992 (7th Cir. 1990); Button v. Harden, 814 F.2d 382 (7th Cir.

1987); Frier v. Vandalia, 770 F.2d 699 (7th Cir. 1985). Several of these opinions recognized that they depended on a prediction that the Supreme Court of Illinois would decide to apply the same-transaction approach to the law of preclusion rather than the same-evidence approach. State appellate courts were divided on that question. If the state's highest court were to adopt the same-evidence approach, then the scope of preclusion would be contracted. For example, Durgins would not have needed to present her retaliation theory to the state court, because it depended on evidence other than that before the Board, even though it involved the same transaction (her discipline and discharge). Not long ago the Supreme Court of Illinois confronted the issue and chose the transactional approach. See River Park v. Highland Park, 184 Ill. 2d 290, 703 N.E.2d 883 (1998). This confirms the prediction made in our decisions and establishes that Durgins is precluded from pursuing her claim.

A brief word is in order about the Rooker-Feldman doctrine, named after Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). This doctrine stands for the principle that decisions of state courts may not be challenged in litigation under sec.1983; instead the aggrieved party must pursue all remedies through the state system and then seek certiorari under 28 U.S.C. sec.1257. Although Davis, Pirela, Hagee, and similar cases apply the doctrine of claim preclusion--which means that defendants are entitled to judgment on the merits--Manley applied the Rooker-Feldman doctrine to materially identical circumstances. When Rooker-Feldman applies, there is no federal jurisdiction and a dismissal is not on the merits. Normally the Rooker-Feldman doctrine applies when the injury is inflicted by the state court's decision, while if all the state court has done is fail to rectify an injury caused by some other actor then claim preclusion is the appropriate doctrine. See, e.g., Homola v. McNamara, 59 F.3d 647 (7th Cir. 1995); GASH Associates v. Rosemont, 995 F.2d 726 (7th Cir. 1993). This understanding places a suit such as Durgins's on the preclusion side of the line: the injury comes from her discharge, not from the

state court's failure to order her reinstatement.

Manley applied the Rooker-Feldman doctrine not because of any disagreement with this understanding (or with the holdings of Davis, Pirela, and Hagee) but because the parties themselves couched their arguments in Rooker- Feldman terms. The district court dismissed Manley's suit under the Rooker-Feldman doctrine. Instead of arguing that preclusion rather than Rooker-Feldman is the right lens, Manley contended that "his claims should not have been dismissed under the Rooker-Feldman doctrine because they could not have been brought in state court." 236 F.3d at 396. This "because" clause concerns the scope of claim preclusion-- particularly, the propriety of joinder in state court--rather than any subject that matters to application of the Rooker-Feldman doctrine. In sum, Manley is a preclusion decision in Rooker-Feldman clothing. We understand it as a preclusion decision because otherwise it would effectively overrule Davis, Pirela, and Hagee, three decisions that it avowedly followed. Thus Durgins's claim should be dismissed on the basis of the City's affirmative defense of preclusion, not for lack of jurisdiction.

Reversed