# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 03-3851 & 03-3853

ZURICH AMERICAN INSURANCE COMPANY,

*Petitioner-Appellee/Cross-Appellant,*

*v.*

WATTS INDUSTRIES, INC.,

*Respondent-Appellant/Cross-Appellee,*

and

JAMES JONES COMPANY,

*Respondent/Cross-Appellee.*

———————

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 01 C 7673—**Elaine E. Bucklo**, *Judge.*

———————

ARGUED MAY 3, 2005—DECIDED AUGUST 2, 2005

———————

Before FLAUM, *Chief Judge*, and KANNE and SYKES,
*Circuit Judges.*

KANNE, *Circuit Judge.* Zurich American Insurance
Company insured Watts Industries, Inc., and James Jones
Company under a program consisting of both primary lia-
bility policies and deductible agreements. Only the deduct-

ible agreements contained arbitration clauses. Watts and Jones successfully sued Zurich in California state court for defense costs in two lawsuits filed against them by other parties. Thereafter, the parties contested application of the deductible agreements, and Zurich petitioned the district court to compel arbitration. The district court granted the petition with respect to Watts, and denied it with respect to Jones. Both Watts and Zurich appeal; for the reasons stated herein, we affirm the order compelling arbitration as to Watts and exempting Jones from arbitration. We remand to the district court for clarification of precisely which deductible agreements give rise to an arbitrable dispute.

## I.  History

We begin with a brief introduction of the parties and a recap of the long and tortured history of this case. Zurich is an insurer incorporated under New York law, with its home office in New York City and its main administrative office in Schaumburg, Illinois. Watts is a manufacturer of valves and other waterworks parts that are used in municipal water systems. Watts is incorporated under Delaware law, with its principal place of business in Massachusetts. Jones is another manufacturer of valves used in public water systems, with both its incorporation and principal place of business in California. Jones was a wholly owned subsidiary of Watts from 1987 until it was sold in September 1996.

Zurich issued six primary liability insurance policies to Watts, in effect for successive one-year periods between June 30, 1991, and June 30, 1997. The policies provided coverage for both Watts and its subsidiary, Jones. The insurance contracts do not contain arbitration clauses. Watts entered into separate deductible agreements with Zurich

during these same six years.[1] Each deductible agreement contains a broad arbitration clause. For example, the 1991-92 agreement requires arbitration of "any dispute [that] arise[s] between the Company and the Insured with reference to the interpretation of [the] Agreement or their rights with respect to any transaction involved[.]" (Zurich's App. at 337.) Each agreement provides for arbitration in Schaumburg, Illinois. Jones did not sign any of the deductible agreements.

Watts and Jones were sued for fraud by third parties in two cases in the California state courts in 1997 and 1998. The cases were titled *Los Angeles Department of Water and Power, et al. ex rel. Armenta v. James Jones Co., et al.*, Los Angeles County Superior Court, Case No. BC 173487 ("*Armenta*"), and *Rothschild v. James Jones Co.*, San Diego County Superior Court, Case No. 726930 ("*Rothschild*"). Both claims were tendered to Zurich, but Zurich denied its duty to defend and indemnify Watts and Jones.

In February 2001, Watts filed suit against Zurich in the Los Angeles Superior Court seeking defense and indemnity for the *Armenta* and *Rothschild* actions under the primary liability policies. Watts asserted claims for breach of contract and bad faith. Jones filed a similar coverage suit against Zurich in June 2001, and the two actions were consolidated. The California court conducted a mandatory settlement conference in August 2001. Zurich raised the deductible agreements as a defense to entering a settlement agreement during this conference, claiming that even if Zurich were liable under the policies, Watts would be responsible for fully reimbursing Zurich under the deductible agreements. In an order issued August 3, 2001, the

---

[1] Signed deductible agreements exist only for the 1991-92, 1992-93, and 1996-97 policy periods, but the parties agree that written deductible agreements were in effect for all six policy periods.

court gave the parties 60 days to attempt to resolve the issues discussed during settlement.

In a letter to Watts dated August 31, 2001, Zurich indicated that it would address the applicability of the deductible agreements "in due course, as required." Watts responded with a letter on September 6, 2001, ("the September 6 letter") stating that there was "no need for any further delay" in resolving the issues of the deductibles and setting out four points regarding the application of the deductible agreements. First, Watts stated that the deductible agreements do not apply to Jones. Second, Watts claimed that "[b]ecause [Zurich] repudiated [the insurance] policies and agreements by wrongfully refusing to fund the defense of its insureds, Zurich [was] foreclosed from relying upon the deductible agreements." Third, Watts asserted that because Zurich failed to mention the deductible agreements until 3½ years after Watts tendered the *Armenta* and *Rothschild* actions, it "waived any rights it may have had to seek to enforce those agreements." Finally, Watts claimed that even if the deductible agreements could be invoked, "Zurich would remain liable for providing Jones with a full defense in the underlying cases and would remain liable to fund Watts' defense once Watts satisfied the $500,000 deductible . . . set forth in each deductible agreement[.]" Watts then proposed a resolution whereby Zurich would pay the full amount of defense costs for *Armenta* and *Rothschild*.

On September 21, 2001, Zurich responded to the September 6 letter with a demand for arbitration against both Watts and Jones, which Watts and Jones rejected. On October 4, 2001, Zurich filed a petition to compel arbitration in federal court in Illinois and asked the California superior court to stay the California coverage action. The superior court refused to do so, and on November 27, 2001, granted Watts's motion for summary judgment. Zurich was held to have a duty to defend the *Armenta* action and any arbitra-

ble disputes under the deductible agreements were deemed severable from the claims and issues in the California coverage action.

Back to the Illinois proceedings. Zurich initially asked for arbitration of everything—the duty to defend both Watts and Jones and application of the deductible agreements with respect to both companies—in its October 2001 motion to compel arbitration. On May 1, 2002, Zurich filed a motion for a temporary restraining order in the district court seeking to restrain the California court from enforcing its November 2001 duty to defend order, which the district court granted.[2] On September 9, 2002, the district court ruled on Zurich's petition to compel arbitration in the order that gives rise to this appeal. At that point, Zurich had made a partial payment to Watts and Jones (more than $4 million, according to Zurich's memorandum in support of its petition) for claimed defense costs. The district court's initial order stated that Jones was not subject to arbitration, that the duty to defend in the *Armenta* action was not arbitrable, and that Zurich had not waived its right to arbitrate under the deductible agreements. The district court granted the petition to compel arbitration as follows:

> (1) as to *Armenta*, whether Zurich's breach of the duty to defend found by the California court constituted a repudiation by Zurich of the deductible agreement;

> (2) as to *Rothschild*, whether the provision of the 1991-1992 deductible agreement stating that Zurich "as-

---

[2] The court actually denied the order with respect to *Armenta*, holding that it lacked jurisdiction over issues already decided by the California court under the *Rooker-Feldman* doctrine, and denied the order with respect to Jones. *Zurich Am. Ins. Co. v. Sup. Ct. for the State of Cal.*, 200 F. Supp. 2d 929, 934 (N.D. Ill. 2002). The temporary restraining order, therefore, enjoined only further California proceedings concerning Watts and Zurich except for those related to the duty to defend in *Armenta*. *Id.*

sumes responsibility for the investigation, defense and settlement obligations under this Agreement as respects the policies . . ." creates a duty to defend under the deductible agreement, and if so whether it was breached; and

(3) with respect to *Rothschild*, what the obligations of the parties are with respect to payment and reimbursement of defense costs above the $500,000 deductible.

Then, on September 30, 2002, this court reversed the injunction staying coverage litigation in the California courts. *See Zurich Am Ins. Co. v. Sup. Ct. for the State of Cal.*, 326 F.3d 816, 827-28 (7th Cir. 2002). The district court vacated its September 9, 2002, order pending the Seventh Circuit opinion concerning the injunction, which was issued on April 17, 2003. On September 25, 2003, the district court reinstated its September 9 order, "amended only to reflect the fact that the duty to defend in *Armenta* is arbitrable to the same extent [the court] previously found the duty to defend in *Rothschild* arbitrable under the deductible agreement."

The parties agree that the second issue slated for arbitration by the district court, concerning a duty to defend the *Rothschild* case arising out of the deductible agreement, was erroneously ordered by the district court. Neither Watts nor Zurich has ever contended that any deductible agreement imposed a duty to defend on Zurich. Also, because the California Court of Appeal affirmed the superior court's summary judgment order finding that Zurich was bound to pay for Watts's and Jones's defense, and the California Supreme Court declined to review that decision, the issue of whether Zurich has a duty to defend is moot. *See Watts Indus., Inc. v. Zurich Am. Ins. Co.*, 121 Cal. App. 4th 1029, 1035 (Cal. Ct. App. 2004). We are left with an order exempting Jones from arbitration, and compelling arbitration of the following issues: (1) whether Zurich repu-

diated the deductible agreement by breaching the duty to defend *Armenta*, and (2) what obligations the parties have with respect to the deductible agreements.[3]

## II.  Analysis

Both Watts and Zurich appeal the revised order. Watts contends that there are no arbitrable disputes under the deductible agreements at all, claiming that there was (and is) no ripe dispute between the parties under the deductible agreements and that it did not anticipatorily repudiate the deductible agreements in the September 6 letter. Zurich, for its part, argues that Jones should be forced to arbitrate despite the fact that it was not a signatory to the deductible agreements.

Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate. *See* 9 U.S.C. § 4; *see also Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999). We review *de novo* a district court's order compelling arbitration. *Kiefer*, 174 F.3d at 909.

### A.  Zurich's Appeal

We address Zurich's appeal first, which deals with the relatively simple issue of whether Jones can be compelled to arbitrate under the deductible agreements. Jones did not sign the agreements containing arbitration clauses and

---

[3]  It appears that the district court erroneously ordered arbitration of the deductible agreement issue with respect to *Rothschild*. According to the briefs and the September 6 letter, the dispute is actually related to *Armenta*.

states that it never agreed to arbitrate anything. Zurich argues that Jones is bound to arbitrate issues respecting the deductible agreements despite the fact that it did not sign them, asserting that (1) Watts, as Jones's parent company, bound Jones to the agreements, and (2) Jones has invoked the benefits of the insurance policies, and thus may not avoid the obligation of arbitration contained in the agreements associated with the insurance policies.

The language of the 1994-95, 1995-96, and 1996-97 deductible agreements indicates that "[Watts] and each named insured stated in the Policy(ies) shall be jointly and severally responsible for the obligations under [the agreements]." (Watts's App. at 150, 176, 189.) Jones was, of course, a "named insured" in the primary liability policies. But "[a]rbitration is contractual by nature—'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (7th Cir. 1995) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). That said, there are five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference. *Fyrnetics (H.K.) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002); *accord Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999).

Zurich does not argue that Jones has shown an intent to assume obligations under the deductible agreements or that the agreements are incorporated by reference to the insurance policies. Rather than explicitly arguing that principles of agency or veil piercing are applicable, Zurich alludes vaguely to the fact that Jones was a wholly owned

subsidiary of Watts,[4] and thus should not be permitted to avoid arbitration. The district court correctly found that the relationship between Watts and Jones is insufficient for Jones to be bound by Watts's signature on any type of agency or alter ego theory. As the court's September 9, 2002, order noted, "a mere parent-subsidiary relationship 'does not create the relation of principal and agent or alter ego between the two.'" (Quoting *Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750, 756 (Ill. App. Ct. 2000)). A corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement. *Thomson-CSF*, 64 F.3d at 777.

Zurich's remaining argument, that Jones "cannot take policy benefits without being bound . . . to the associated deductible agreements and the duty to arbitrate issues respecting those agreements[,]" is based on an estoppel theory. A nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause. *See Thomson-CSF*, 64 F.3d at 778; *see also Indus. Elecs. Corp. of Wis. v. iPower Distribution Group*, 215 F.3d 677, 680 (7th Cir. 2000) (stating in dicta that a third-party beneficiary of a contract would be bound by its arbitration provision).

But caselaw consistently requires a *direct* benefit under *the contract containing an arbitration clause* before a reluctant party can be forced into arbitration. *See Thomson-CSF*, 64 F.3d at 779 (holding that although the unwilling party received a benefit, the benefit did not derive directly from the agreement containing the arbitration clause and thus arbitration could not be compelled); *accord Am. Bureau of Shipping*, 170 F.3d at 353 (ordering arbitration because the nonsignatory received the direct benefits of a lower insur-

---

[4] Again, Jones was sold in September 1996, so it was not a subsidiary of Watts for the entire time period relevant to this case.

ance rate and the ability to sail under the French flag as a result of an agreement containing an arbitration provision). Jones has not sought to enforce any rights it has under the deductible agreements, and in fact there would be no benefits to Jones under those agreements. Even assuming that Jones has benefitted from the deductible agreements by paying lower insurance premiums based on the deductibles, this benefit is too attenuated and indirect to force arbitration under an estoppel theory. We conclude that there are no grounds for compelling Jones to arbitrate, and we will affirm the district court's decision with respect to this issue.

### B. Watts's Appeal

We now turn to Watts's appeal. The district court's decision compelling arbitration was based solely on the September 6 letter which, in the court's view, showed a dispute within the scope of the deductible agreements because Watts had "anticipatorily repudiated" the agreements. Watts contends that this letter was a settlement communication, and that the court's consideration of it to Watts's disadvantage was a violation of Federal Rule of Evidence 408. Watts also argues that there was not—and is not—a dispute ripe for arbitration under the deductible agreements.

The rules of evidence provide:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Fed. R. Evid. 408. The primary policy reason for excluding settlement communications is that the law favors out-of-court settlements, and allowing offers of compromise to be used as admissions of liability might chill voluntary efforts at dispute resolution. *See, e.g.*, *Perzinski v. Chevron Chem. Co.*, 503 F.2d 654, 658 (7th Cir. 1974).

We assume for the purposes of this analysis that Watts's September 6 letter is in fact a settlement communication subject to Rule 408.[5] By its terms, the rule forbids admission of evidence only when it is offered to prove "liability for or invalidity of the claim or its amount." *See* Advisory Committee's Note, Fed. R. Evid. 408. The district court has broad discretion to admit evidence for a purpose other than proving liability; we review the district court's decision to do so for abuse of discretion and reverse only if there is manifest error. *See Belton v. Fibreboard Corp.*, 724 F.2d 500, 505 (5th Cir. 1984); *see also Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2d Cir. 1999).

Evidence coming out of settlement negotiations is obviously admissible to show bias or prejudice of a witness. *See* Advisory Committee's Note, Fed. R. Evid. 408. It has also been admitted by courts for additional purposes other than establishing liability, including for purposes of rebuttal, for purposes of impeachment, to show knowledge and intent, to show a continuing course of reckless conduct, and to prove estoppel. *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 484 (7th Cir. 2000) (collecting authority). In deciding whether Rule 408 should be applied to exclude evidence, courts must consider the spirit and purpose of the rule and decide whether the need for the settlement

---

[5] Zurich argues that because Watts demanded full payment for its defense in *Rothschild* and *Armenta* rather than proposing a "compromise," the September 6 letter is not a settlement communication subject to Rule 408.

evidence outweighs the potentially chilling effect on future settlement negotiations. *Id.*; *Starter*, 170 F.3d at 293. The balance is especially likely to tip in favor of admitting evidence when the settlement communications at issue arise out of a dispute distinct from the one for which the evidence is being offered. *See Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997) ("Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated, though admission of such evidence may nonetheless implicate the same concerns of prejudice and deterrence of settlements which underlie Rule 408[.]") (citations omitted); *Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992) ("Rule 408 did not bar this evidence because it related to settlement discussions that involved a different claim than the one at issue in the current trial."); *Vulcan Hart Corp. v. NLRB*, 718 F.2d 269, 277 (8th Cir. 1983) ("Rule 408 excludes evidence of settlement offers only if such evidence is offered to prove liability for or invalidity of the claim under negotiation."); *cf. Starter*, 170 F.3d at 294 (holding that evidence of agreement to settle trademark case was properly admitted in subsequent dispute between parties in which one asserted a claim for estoppel).

In this case, the September 6 letter was written, by Watts's own admission, in an effort to settle the California coverage action out of court. Of course the two actions are not totally unrelated. Zurich did, after all, raise the deductible agreements as a defense to its duty to defend Watts in *Armenta* and *Rothschild*. Still, the California action—based on the primary liability insurance policies—is distinct from the Illinois petition to compel arbitration under the deductible agreements. Notwithstanding Watts's protestation that "[h]ad [it] known that settlement efforts would be used by the court as proof of the need for an arbitration, [it] would not have engaged in settlement efforts[,]" we do not believe that the policy behind Rule 408 is

thwarted by admission of this evidence in the instant case. Watts could have negotiated settlement of the California coverage action without bringing the deductible agreements into the mix.[6] The district court did not abuse its discretion by admitting the September 6 letter, related to settlement of the action in California state court, for the purpose of determining whether there was an arbitrable dispute under the deductible agreements.

Having found that the September 6 letter was properly admitted in evidence, we return to a *de novo* analysis of whether arbitration was properly compelled. In the letter, Watts asserted its position that Zurich could not enforce the deductible agreements against Watts because Zurich had breached its duty to defend Watts under the primary liability policies. Watts also claimed that Zurich had waived its right to enforce the agreements. Finally, Watts wrote that even if the deductible agreements were applicable, Watts could be liable for no more than $500,000 for its own defense. Contrary to the district court's finding, Watts argues, this language did not constitute anticipatory repudiation, because Watts did not definitively state that unless its demand was met, it would not perform under the deductible agreement. *See* 9 Corbin on Contracts, Ch. 54, § 973 (2005).

Watts could be right. But Zurich need not show that Watts anticipatorily repudiated the deductible agreements to compel arbitration; it need only show a written agreement to arbitrate, a dispute within the scope of the agreement, and a refusal by Watts to arbitrate. *See Kiefer*, 174 F.3d at

---

[6]  Zurich's letter dated August 31, 2001, stated that Zurich would address the applicability of the deductible agreements "in due course, as required." Watts's response in its September 6 letter was that "the time to resolve [the deductible agreement] issues is now."

909. As the first and third elements are uncontested,[7] all that remains is for Zurich to prove "any dispute . . . between [Zurich] and [Watts] with reference to the interpretation of [the] agreement[.]" (1991-92 Deductible Agreement, Zurich's App. at 337.) The district court correctly noted that to show a "dispute," Zurich "must show that [Watts] has acted, or has threatened to act, in a manner inconsistent with [Zurich's] interpretation of the contract." *Chi. Typographical Union No. 16 v. Chi. Sun-Times, Inc.*, 860 F.2d 1420, 1426 (7th Cir. 1988). Watts's view of the deductible agreements and their applicability as set forth in its September 6 letter were inconsistent with Zurich's interpretation as set forth in its September 21, 2001, letter. (Watts's App. at 18-22 (stating that Zurich disagreed with each of Watts's four contentions with respect to the deductible agreements and demanding arbitration).) Watts's statements were a sufficient threat that it would not perform its deductible obligations—sufficient to show a "dispute"—and, considering the broad scope of the arbitration clauses at issue, this dispute is clearly within the scope of the deductible agreements.

There is some discussion in the briefs about the amount of money Zurich had paid Watts at the time the petition for arbitration was filed (none)[8] and how this affects the ripeness of the petition. As Watts points out, it could hardly

---

[7] Although Watts maintains in its brief that it "never refused to arbitrate a dispute under the applicable Deductible Agreements[,]" Watts's conduct after Zurich's request for arbitration and position taken in these proceedings clearly manifest a refusal to arbitrate. On October 2, 2001, Watts sent a letter to the California court presiding over the coverage action denying its duty to arbitrate. (Watts's App. at 24.)

[8] Zurich made a partial payment of $4 million immediately prior to the district court's ruling, almost one year after filing the petition to compel arbitration. At this point, Zurich has paid more than $41 million in defense costs.

have been obligated to reimburse Zurich under the deductible agreement when it had not received the money for its defense in the underlying actions in the first place. But, because of the broad arbitration clause and the fact that the agreement does not require actual breach as a precondition for arbitration, the issue is irrelevant. Watts's threat of nonperformance under the deductible agreements in the September 6 letter made the dispute ripe. We will therefore affirm the district court's order to arbitrate.

Not surprisingly, the parties also dispute the scope of the compelled arbitration. Watts says that, assuming any issues are arbitrable, that arbitration should be limited to (1) whether Zurich has repudiated the deductible agreements by failing to pay for Watts's defense under the 1994-95 and 1995-96 primary liability policies, and (2) the parties' respective rights and obligations under the deductible agreements from those two years—the only two corresponding to the policy periods under which payments have been made. The California court determined that defense costs were only payable under the policies covering 1994-1996, not under all six policies as Zurich desired. For its part, Zurich says that arbitration should occur under all six deductible agreements.

"Whether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986) (internal quotation and citation omitted). We have already discussed the fact that Watts is bound to arbitrate any dispute that amounts to a differing interpretation than Zurich's of a given deductible agreement. The district court did not make a finding regarding which deductible agreements the parties dispute. Noting that the court is not to rule on the potential merits of the underlying claims, *see id.*, we will remand to the district court to identify precisely which

agreements the parties' dispute arises under, and thus under which agreements their obligations and rights may be arbitrated.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's order compelling arbitration between Zurich and Watts and exempting Jones from arbitration. We REMAND for clarification as to which deductible agreements are subject to the arbitration between Zurich and Watts.

A true Copy:

      Teste:

                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*